UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVIER ALMAGUER, JR., <br><br> Plaintiff, <br><br> v. <br><br> K. HIXON, et al., <br><br> Defendants. | No. 1:24-cv-00399 GSA (PC) <br><br> ORDER DIRECTING PLAINTIFF TO SHOW CAUSE WHY THIS MATTER SHOULD NOT BE SUMMARILY DISMISSED FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES <br><br> PLAINTIFF'S SHOWING OF CAUSE OR PROOF OF EXHAUSTION DUE **MAY 8, 2024** |

Plaintiff, a state prisoner proceeding pro se and in forma pauperis, has filed this civil rights action seeking relief under 42 U.S.C. § 1983. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

Before this Court is Plaintiff's original complaint. ECF No. 1. For the reasons stated below, Plaintiff shall be ordered to show cause why this matter should not be summarily dismissed for failure to exhaust administrative remedies prior to filing this action. In the alternative, he will be permitted to file proof that he has exhausted his administrative remedies.

I.   THE COMPLAINT

On March 28, 2024, Plaintiff's complaint was docketed. See ECF No. 1 at 1. The complaint names three individuals as defendants, all of whom were employed at North Kern State Prison ("NKSP") at the time the incidents in question took place: Warden K. Hixon; Dr. N.

Odeluga, Chief Medical Executive, and "RN/LVN Pill Administrer [sic] (Window 4)" ("Defendant RN/LVN"). Id. at 3.

Plaintiff contends that on the evening of March 6, 2024, Defendant RN/LVN gave him the wrong medication and forced him to take it, despite the fact that he told her two times it was not the correct medication. ECF No. 1 at 5, 7. He argues that Defendant RN/LVN had no concern for his safety or his life and that she knew that he would get written up if he refused to take the medication. ECF No. 1 at 7. After taking the pill, Plaintiff states he began to fill nauseous and lightheaded. ECF No. 1 at 5-6. Plaintiff asserts that following taking the pill he told another inmate what had just happened, and was advised by this inmate to throw up the pill, which he did. ECF No. 1 at 5.

Plaintiff further states that when he took the pill to a correctional officer and told him what had happened, he logged the incident and then told Plaintiff to file a medical grievance about it. See ECF No. 1 at 6. He contends that Defendant Hixon violated his rights by failing to have a policy and/or training in place to prevent "negligence that has the potential to cause harm even death." ECF No. 1 at 6. He also contends that as the Chief Medical Executive, Defendant Odeluga violated his civil rights by "hiring and employing someone with such a disregard for a persons [sic] well being [sic] and health." ECF No. 1 at 6 (brackets added).

Plaintiff argues that Defendant RV/LVN should either be reprimanded or fired. ECF No. 1 at 8. Although Plaintiff acknowledges that neither Defendants Hixon and Odeluga had no direct knowledge of the incident, they are nonetheless culpable because it is their responsibility to protect him and therefore asks that their pay be docked and that the incident be put in their permanent files. ECF No. 1 at 8. He also requests $250,000.00 in damages for pain and suffering due to the medical negligence of all three Defendants. ECF No. 1 at 8.

II   APPLICABLE LAW:  THE EXHAUSTION REQUIREMENT

A.  The Prison Litigation Reform Act

Because Plaintiff is a prisoner challenging the conditions of his confinement, his claims are subject to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). The PLRA requires prisoners to exhaust available administrative remedies before bringing an action

challenging prison conditions under Section 1983. 42 U.S.C. § 1997e(a). "The PLRA mandates that inmates exhaust all available administrative remedies before filing 'any suit challenging prison conditions,' including, but not limited to, suits under [Section] 1983." Albino, 747 F.3d at 1171 (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006)).

"[F]ailure to exhaust is an affirmative defense under the PLRA." Jones v. Bock, 549 U.S. 199, 216 (2007). As a result, it is usually a defendant's burden "to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino, 747 F.3d at 1172 (citing Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996)). The burden then "shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies unavailable to him." Id.

At the same time, however, "a complaint may be subject to dismissal for failure to state a claim when an affirmative defense (such as failure to exhaust) appears on the face of the pleading." Jones, 549 U.S. at 215. Exhaustion is not a jurisdictional requirement for bringing an action. See Woodford v. Ngo, 548 U.S. 81, 101 (2006).

Regardless of the relief sought, "[t]he obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies ... available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis and alteration in original) (citing Booth v. Churner, 532 U.S. 731 (2001)).

"Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate ... must exhaust available remedies, but need not exhaust unavailable ones." Ross v. Blake, 578 U.S. 632, 642 (2016) (brackets in original). In discussing availability in Ross, the Supreme Court identified three circumstances in which administrative remedies were unavailable: (1) where an administrative remedy "operates as a simple dead end" in which officers are "unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) where an administrative scheme is "incapable of use" because "no ordinary prisoner can discern or navigate it;" and (3) where "prison administrators thwart inmates from taking

advantage of a grievance process through machination, misrepresentation, or intimidation." Ross, 578 U.S. at 643-44. "[A]side from [the unavailability] exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust – irrespective of any 'special circumstances.' " Id. at 639. "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." Id. at 639.

### B. California Regulations Governing Exhaustion of Administrative Remedies

"The California prison system's requirements 'define the boundaries of proper exhaustion.' " Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) (quoting Jones, 549 U.S. at 218). In order to exhaust, the prisoner is required to complete the administrative review process in accordance with all applicable procedural rules. Woodford, 548 U.S. at 90. The appeal process is initiated by an inmate filing a "Form 602" the "Inmate/Parolee Appeal Form," and describing the specific issue under appeal and the relief requested. "The California prison grievance system has three levels of review: an inmate exhausts administrative remedies by obtaining a decision at each level." Reyes v. Smith, 810 F.3d 654, 657 (9th Cir. 2016) (citing Cal. Code Regs. tit. 15, § 3084.1(b) (2011); Harvey v. Jordan, 605 F.3d 681, 683 (9th Cir. 2010)).

### III. DISCUSSION

Plaintiff shall be ordered to show cause why this matter should not be summarily dismissed for failure to exhaust his administrative remedies before he *brought* this matter in federal court. See, 42 USC sec 1997e(a). The PLRA requires that a prisoner exhaust before submitting any papers to the Federal Court. See, Vaden v Summerhill 449 F3d 1047, 1048 (9th Cir., 2006). In Plaintiff's complaint, although he states that he filed a prison grievance, importantly when asked on the Complaint form if the grievance procedure is completed he checked the "No" box and wrote "they haven't responded yet".

Additionally, as Federal law requires that prisoner litigants exhaust all administrative remedies prior to filing their complaints in federal court, it is highly unlikely that between March 6, 2024, when the incident in question is alleged to have occurred (see ECF No. 1 at 5), and March 20, 2024, when Plaintiff signed the instant complaint (see id. at 8) (signature date of

complaint)[1] and which was docketed on March 28, 2024, that Plaintiff was capable of completing the prison exhaustion process.

For these reasons, Plaintiff will be ordered to show cause why this matter should not be summarily dismissed for failure to exhaust administrative remedies.  In the alternative, Plaintiff may file proof that he has exhausted his administrative remedies at NKSP, and did so prior to bringing this action.  Plaintiff will be given thirty days to do so.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff shall SHOW CAUSE why this matter should not be SUMMARILY DISMISSED for failure to exhaust administrative remedies prior to bringing this action;

2. In the alternative, Plaintiff may file proof that he exhausted his administrative remedies at North Kern State Prison prior to bringing this action, and

3. Plaintiff shall file either his showing of cause or proof that he has exhausted his administrative remedies by **May 8, 2024**.

**Plaintiff is cautioned that absent exigent circumstances, no extensions of time will be granted to comply with this order.**

IT IS SO ORDERED.

    Dated:   **April 7, 2024**                         **/s/ Gary S. Austin**
                                                              UNITED STATES MAGISTRATE JUDGE

---

[1] When a prisoner gives a pleading to prison authorities to be mailed to a court, the court deems it constructively filed on the date that it is signed.  Roberts v. Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010) (citing Huizar v. Carey, 273 F.3d 1220, 1223 (9th Cir. 2001)).c